UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ASHLEY B.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:20-cv-01135-YY

OPINION AND ORDER

YOU, Magistrate Judge.

     Plaintiff Ashley B. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and SSI on October 26, 2017, alleging disability beginning on June 5, 2009. Her application was initially denied on January 26, 2018, and upon reconsideration on June 12, 2018. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on September 26, 2019. After receiving testimony from plaintiff and a vocational expert, the ALJ issued a decision on October 10, 2019, finding plaintiff not disabled within the meaning of the Act. The Appeals Council denied plaintiff's request for review on May 26, 2020. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

2 – OPINION AND ORDER

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 26, 2017. At step two, the ALJ determined plaintiff suffered from the following severe impairments: spondylolysis, neuromuscular scoliosis, PTSD, and generalized anxiety disorder (20 CFR 416.920(c)).

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could "perform light work as defined in 20 C.F.R. § 416.967(b) except she can frequently climb ramps and stairs, kneel, and crawl. She can occasionally climb ladders, ropes, or scaffolds, stoop, and crouch. She can perform simple, routine tasks not to exceed SVP 2 in a work setting with no frequent or close contact with the public and/or coworkers. She can interact appropriately with others during brief and routine encounters. She needs a predictable work environment."

At step four, the ALJ found plaintiff was unable to perform any past relevant work. At step five, the ALJ found that—considering plaintiff's age, education, work experience, and

3 – OPINION AND ORDER

residual functional capacity—there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Thus, the ALJ concluded that plaintiff was not disabled.

## DISCUSSION

I.  **Residual Functional Capacity**

    A.  **Plaintiff's Testimony**

Plaintiff contends the ALJ erred by ignoring her testimony regarding her ability to carry out instructions, performance problems, concentration and attention deficits at work, and deficiencies in ability to understand and process a limited amount of information at a time. Pl. Br. 12.

Under "well-established case law, and where, as here, the ALJ 'determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.'" *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (alterations in original). The ALJ's reasoning must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, when coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ did not explain how the medical evidence contradicted plaintiff's testimony. In fact, the ALJ did not address plaintiff's subjective symptom testimony at all. The ALJ concluded plaintiff has moderate limitation in understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace, and mild limitation in adapting or managing herself. Tr. 148, 150. The ALJ observed that plaintiff did not fill out a function report, but indicated he "considered [plaintiff's] testimony and the medical evidence of record in assessing the 'paragraph B' criteria." Tr. 148. But the ALJ did not discuss plaintiff's testimony regarding her subjective complaints. Instead, the ALJ wrote that "[r]ather than relying solely on the claimant's subjective complaints, I have compared her allegations to the medical evidence of record," and then discussed only the medical evidence in detail. Tr. 150. This error was not harmless. *See Lambert*, 980 F.3d at 1278 ("Because the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,' we cannot treat the error as harmless.").

Defendant argues the "ALJ's symptom evaluation was sufficiently specific." Def. Br. 17. But the ALJ only recited plaintiff's testimony regarding her marital and living status, Tr. 149, and household chores. Tr. 150. The ALJ did not discuss plaintiff's subjective symptom testimony regarding her mental impairments, and this was error. *See Mary H. v. Comm'r of Soc. Sec.*, No. C18-5845 RBL, 2019 WL 2171544, at *2 (W.D. Wash. May 20, 2019) (finding error when the ALJ "summarized Plaintiff's treatment history during the alleged disability period, but did not address how the medical evidence contradicted Plaintiff's testimony"); *Rita J. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-CV-00426-HZ, 2020 WL 2490094, at *3 (D. Or. May 13, 2020) (same).

6 – OPINION AND ORDER


### B. Ability to Carry Out Instructions

Plaintiff also contends the RFC is not supported by substantial evidence because it does not address her ability to carry out instructions. Plaintiff observes that while the RFC indicates plaintiff "can perform simple, routine tasks not to exceed SVP 2 in a work setting," "these limitations ignored the level or type of instructions involved." Pl. Br. 10. Plaintiff argues "[t]his is important because the ability to carry out specific tasks, including their complexity, or number of steps required, is unrelated to the capacity to carry out instructions." *Id.* at 9. Plaintiff also contends the RFC's limitation of "simple, routine tasks not to exceed SVP 2" is consistent with 1-2 step tasks. Pl. Br. 11. Plaintiff argues that a "proper RFC regarding instructions would have defined plaintiff's ability to carry out simple, 1-2 step instructions, or an ability to carry out detailed or complex instructions," and "a complete RFC would also define the type of instructions involved, such as written or verbal." *Id.* Plaintiff further contends that "[a]nother way to address this deficiency would have been for the RFC to define plaintiff's reasoning level capacity as part of the RFC." *Id.*

As previously, discussed, this matter is being remanded for the ALJ to correct the error in failing to address plaintiff's subjective symptom testimony. Nevertheless, because the same issues will likely arise again on remand, it is helpful to provide some initial impressions of plaintiff's argument here.

The RFC is "the most you can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a). The regulations recognize that, for purposes of assessing mental abilities, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision,

coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work." 20 C.F.R. § 416.945(c).

The Dictionary of Occupational Titles ("DOT") lists a specific vocational preparation (SVP) time for each described occupation. Social Security Ruling, SSR 00-4p. The SVP rating is a "guideline for determining how long it would take a claimant to achieve average performance in a job as part of [the] evaluation of whether the claimant's past work is relevant." DI 25001.001 Medical and Vocational Quick Reference Guide, § 77. Generally, unskilled work corresponds to an SVP of 1 to 2. Social Security Ruling, SSR 00-4p. The learning time for SVP 2 is "[a]nything beyond short demonstration up to and including one month." DI 25001.001 Medical and Vocational Quick Reference Guide, § 77.

In addition to the SVP, each job has a GED level. "The GED levels include[] the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). Pertinent to this case, Level 1 reasoning involves the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." For level 2 reasoning, one must be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." And for level 3 reasoning, one must be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C, Scale of General Education Development (GED).

8 – OPINION AND ORDER

Plaintiff was evaluated by Lindsay Heydenrych, Psy.D. who opined that plaintiff would "likely have significant difficulty . . . learning new work tasks" due to her post-traumatic stress disorder. Tr. 1014. Dr. Heydenrych opined that plaintiff's "PTSD-related anxiety significantly interferes with attention, concentration and memory, due to intrusive thoughts . . . which interferes with higher order thinking and learning of new tasks." *Id.* State consultative examiners Sergiy Barsukov, Psy.D. and Irmgard Fiedburg, Ph.D., opined that plaintiff's ability to carry out very short and simple instructions was not significantly limited, but her ability to carry out detailed instructions was moderately limited. Tr. 336, 352.

The ALJ gave the vocational expert ("VE") a hypothetical that included all of the limitations contained in the RFC. Tr. 308-09. In response, the VE provided three sample occupations—office helper (DOT 239.567-010), hand packager-inspector (DOT 559.687-074), and pricer (DOT 209.587-034)—all of which have level 2 reasoning. Tr. 309. The ALJ asked the VE to reduce the level from light work to sedentary work, and the VE identified three additional jobs: semiconductor loader (DOT 726.687-030) and semiconductor bonder (DOT 726.685-066), which have level 2 reasoning, and document clerk (DOT 249.587-018), which has level 3 reasoning.

Plaintiff argues that the ALJ "limited [her] to "simple" tasks, which is consistent with reasoning level 1, involving simple 1-2 step instructions." Pl. Br. 9. But "many courts have held that limits to 'simple' and 'routine' 'tasks' are not inconsistent with VE testimony that a claimant can perform jobs that are DOT reasoning level two." *Whitlock v. Astrue*, No. 3:10-CV-357-AC, 2011 WL 3793347, at *4 (D. Or. Aug. 24, 2011) (collecting cases); *Mitzel v. Comm'r of Soc. Sec.*, No. 1:20-CV-01757-BAK, 2022 WL 2670202, at *8 (E.D. Cal. July 11, 2022) ("The Court is cognizant of the cases that recognize 'a limitation to work involving only 'simple tasks,'

9 – OPINION AND ORDER

'simple, repetitive tasks,' or 'simple, routine, repetitive work,' is consistent with the ability to perform Level 2 Jobs.") (collecting cases); *Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) ("There is 'no apparent conflict' between an RFC "limited to simple, repetitive tasks" and a job that requires level 2 reasoning.").

However, "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin*, 778 F.3d at 847 (citing *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (holding a claimant's limitation to "simple and routine work tasks" is "inconsistent with the demands of level-three reasoning" because the plaintiff's residual functional capacity was more consistent with Level 2 than Level 3 Reasoning).[2] In *Zavalin*, the Ninth Circuit held that "because the ALJ failed to recognize an inconsistency, she did not ask the expert to explain why a person with Zavalin's limitation could nevertheless meet the demands of Level 3 Reasoning," and "erred in failing to reconcile this apparent conflict." *Id.*

Here, one of the jobs cited by the VE, document clerk, requires level 3 reasoning. This is in conflict with the residual functional capacity to perform simple and routine tasks. *See Zavalin*, 778 F.3d at 847 (holding "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning") (citing *Hackett*, 395 F.3d at 1176). The ALJ failed to reconcile this conflict, and that was error. *See*

---

[2] *See also Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) (holding "a limitation to simple, routine, or repetitive work is inconsistent with Reasoning Level 3"); *Bowman v. Colvin*, 228 F. Supp. 3d 1121 (D. Or. 2017) ("[W]hen the RFC [restricting the claimant to "simple, detailed, non–complex tasks"] is compared to the definitions of both Level Two and Level Three reasoning, it is clear that the RFC here aligns with Level Two and not Level Three."); *Pugh v. Comm'r of Soc. Sec.*, No. 2:18-CV-1607-KJN, 2019 WL 3936192, at *5 (E.D. Cal. Aug. 20, 2019) ("As noted in *Bowman*, this trend has existed for over a decade across the country.") (collecting cases).

*Karen A. v. Saul*, No. 3:19-CV-01464-KSC, 2020 WL 5630271, at *5 (S.D. Cal. Sept. 21, 2020) (describing ALJ's "affirmative duty to 'ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination'") (quoting *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015)). As the Commissioner argues, this error appears to be harmless because, even "[e]xcluding the document clerk occupation, the vocational expert identified approximately 345,000 light jobs and more than 200,000 sedentary jobs that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform." Def. Br. 18; *see* Tr. 310; *Molina*, 674 F.3d at 1115 (an error is harmless where it is inconsequential to the ultimate non-disability determination). Nevertheless, this is the type of error that can be avoided on remand.

Plaintiff also argues the facts of her case are "nearly identical to those observed in *Rounds* . . . , wherein the court held that reasoning Level 2 requires additional reasoning and understanding above the ability to complete one-to-two step tasks." Reply 3. In *Rounds*, the RFC limited the plaintiff to 1 to 2 step tasks, which the Ninth Circuit found was in conflict with level 2 reasoning and instead was in "close similarity" with level 1 reasoning. 807 F.3d at 1004 (emphasis in original). That is not the case here, where the RFC states that plaintiff is capable of simple, routine tasks and contains no mention of steps. "Generally, district courts in the Ninth Circuit, and particularly in the District of Oregon, have drawn a clear distinction between the limitation to one- to two-step tasks and the limitation to simple, routine, repetitive tasks." *Tara C. v. Comm'r Soc. Sec. Admin.*, No. 6:19-CV-00147-YY, 2020 WL 886297, at *3 (D. Or. Feb. 24, 2020). Thus, *Rounds* does not appear to be directly on point here.

11 – OPINION AND ORDER

Finally, plaintiff argues the ALJ erroneously "addressed the type of tasks she could perform but failed to address her capacity to carry out instructions." Pl. Br. 9. Plaintiff contends the "ability to carry out specific tasks . . . is unrelated to the capacity to carry out instructions." *Id.* Interestingly, in *Rounds*, it was the Commissioner who "stress[ed] that 'task' and 'instruction' are different terms," and argued the plaintiff's inability to complete multi-step *tasks* does not necessarily contradict the VE's opinion that she had the ability to follow detailed *instructions*." 807 F.3d at 1003 (emphasis in original). Again, however, depending on how the ALJ assesses plaintiff's testimony, this is an issue that may or may not arise again on remand.

### C.   Cervical Impairments

Plaintiff contends the RFC is further flawed because the ALJ erroneously found her thoracic and lumbar areas to be severe impairments but did not address her cervical spine. Pl. Br. 15. In particular, plaintiff observes that the state agency physicians, who conducted their evaluations in January and June 2018, did not consider her MRI, which was conducted in August 2019.

As plaintiff notes, the consultative doctors considered her allegations related to thoracolumbar spine and neuromuscular scoliosis. Tr. 330; *see also* Tr. 316 (indicating plaintiff filed for disability due to osteoarthritis of thoracolumbar spine and neuromuscular scoliosis). But, as the Commissioner correctly observes, there is insufficient evidence in the record that plaintiff suffered from a cervical impairment that lasted at least 12 consecutive months.

Plaintiff had a normal x-ray of her cervical spine in July 2017. Tr. 811. Records show an assessment of cervicalgia in January 29, 2019. Tr. 1188-89. A cervical MRI was conducted in August 2019. As the ALJ observed, the results of the MRI were "[c]entral disc extrusion al C5-6 result[ing] in a moderate central canal stenosis" and "[n]o clear evidence of cervical cord or

nerve impingement." Tr. 3070; Tr. 152. The results were normal for segmentation, curvature, stature and alignment, cervical cord and cervicomedullary junction, and paraspinal soft tissues. Tr. 3070. The report indicated "[t]here are minor central disc protrusions at C3-4, C4-5, and C6-7, not associated with central canal or foraminal stenosis" and "[t]he central canal and foramina are normally patent at the remaining cervical levels." Tr. 3070. On this record, there is no error in failing to address plaintiff's cervical impairments in the RFC.

## II.    Step Two

Plaintiff alleges the ALJ erred at step two. At step two, the ALJ determines whether the claimant has an impairment that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96-4p, *available at* 1996 WL 374187; 20 C.F.R. § 404.1513(a). An impairment is "not severe" if it does not "significantly limit" a claimant's ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).

The claimant bears the burden at step two. 20 C.F.R. §§ 404.1512(a), 416.912(a). However, the step two threshold is low; the Ninth Circuit had described it as a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two. *Lewis*, 498 F.3d at 911.

Plaintiff contends the ALJ erred in failing to find that her cervical impairment was severe at step two. But, for the reasons discussed above, plaintiff failed to meet her burden of showing she had a cervical impairment that lasted at least 12 continuous months.

Plaintiff also argues the ALJ erred in failing to consider that, given the totality of her physical circumstances, including her "height of 5'2" and weight of 95 pounds, combined with cervical and lumbar disc disease, and extensive scoliosis with fusion of the thoracic area, she would be unable to sustain light or sedentary work on a sustained basis." Pl. Br. 19. Plaintiff claims her low BMI was improperly ignored by the ALJ, "[d]espite record evidence of a longstanding significantly low BMI." *Id.*

Plaintiff does not contend that she meets Listing 5.08, which pertains to weight loss due to a digestive disorder. Moreover, the record does not show "longstanding significantly low BMI." While plaintiff's BMI was 17.37 in January 2015 (Tr. 200) and 17.74 in August 2014 (Tr. 638), it was 18.43 in March 2015 (Tr. 202), 19.75 in July 2017 (Tr. 772), 19.89 in June 2016 (Tr. 250), and 20.82 in July 2016 (Tr. 250). Also, most importantly, there is no medical opinion to support plaintiff's claim that her height and weight, even when combined with her physical impairments, somehow contribute to her inability to perform less than sedentary work. Thus, on this record, plaintiff did not meet her burden, the ALJ did not err at step two.

## ORDER

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED December 30, 2022.

                                                     /s/ Youlee Yim You
                                                     Youlee Yim You
                                                      United States Magistrate Judge